On Rehearing.
Morgan, J.
The issues presented by both plaintiff and defendants are sufficiently set forth in the opinion heretofore prepared by us.
In that opinion we stated that the plaintiff’s father was, on the sixteenth of January, 1860, allowed to give a special mortgage on the property offered by him; that on the seventeenth of January, 1860, the mortgage was executed and was recorded on the same day. In this there was error. The mortgage was executed - in the parish of Pointe Coupee, and was recorded in that parish on the same day. The property subjected to the mortgage was situated in the parish of West Feliciana. It was not registered in that parish until some ten years after its date, and subsequent to the institution of this suit.
The plaintiff’s claim is the result of a judgment which she obtained against her father, which judgment gives to her a legal mortgage on all his immovable property dating from the third of May, 1852. This judgment was inscribed on the sixteenth of April, 1868. Plaintiff contends that this is a recognition of her tacit mortgage; that it dates back to the year 1852, and that it takes precedence over the bank’s mortgage, acquired subsequent thereto. The bank contends that it was only a judicial mortgage, if, in reality, it has any existence at all, “because the recording of her judgment does not cover the default of inscription of her mortgage before the first of January, 1870.”
The question we are called upon, for the first time, to decide is *406 whether a judgment which recognizes a minor’s claim and mortgage, and which is duly recorded prior to the year 1870, comes under the one hundred and twenty-third article of the constitution, which declares that “ tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the first day of January, 1870, unless duly recorded,” and the act No. 95 of the Legislature of 1869, p. 115, which provides for carrying out the provisions of the article of the constitution quoted.
We think not. The object of the framers of the constitution in adopting that article is apparent. It was to do away with the effects of mortgages not recorded — those mortgages which rested upon property and which were out of sight, and against which protection was almost impossible. The convention therefore declared that no tacit mortgage should rest upon any property in the State after the year 1870, unless it had been duly recorded.
Now, when this article was adopted the plaintiff’s rights were perfect. She had a tacit mortgage upon her father’s property, and the evidence thereof was a judgment of a competent court, which judgment was duly recorded. There was no necessity for her to record over again the judgment which she had obtained. The constitution says that tacit mortgages shall have no effect after a certain date unless duly recorded. Here her mortgage was duly recorded, and this is all that it was necessary she should do. The article did not refer to her. She had complied with its requisites. It only applied to mortgages which had not been recorded.
Upon the two first points discussed in our former opinion our mind remains unchanged.
The next point to determine is whether the plaintiff had a tacit mortgage upon her father’s property. Defendants say she had not, because a special mortgage had been substituted therefor. The facts and circumstances under which the special mortgage was given are detailed' in our former opinion, and it is needless to restate them, except to remark that on the twenty-ninth of December, 1859, plaintiff’s father asked leave of the court to grant a special mortgage to take the place of the tacit one; that his petition was submitted to a family meeting, who recommended it; that the property sought to be mortgaged was designated, and that the proceedings of the family meeting which recommended the acceptance of the same and the sufficiency of the security were homologated. The mortgage was executed and it was recorded. It was executed in the parish of Pointe Coupee and recorded on the same day. But the property mortgaged was situate in the parish of West Feliciana, and it was not recorded there, as we have seen, until years after its execution.
*407 Plaintiff contends that all the proceedings which resulted in this mortgage were worthless; that her tacit mortgage was never released, because the judge never accepted the same. In other words, she contends that after her father had prayed to be allowed to execute this mortgage; after a family meeting had recommended it; after the proceedings of the family meeting had been approved; after the judge had ordered the execution of the mortgage, it was still necessary that the judge should approve of its execution; and, in default thereof, that, the whole proceedings are null, and that her tacit mortgage remained undisturbed.
This question was discussed in the opinion heretofore delivered, to which we refer. We there came to the conclusion that the law had been complied with. Further examination and reflection has satisfied us that we erred. The proceedings did not become final because the mortgage, after it was executed, was not approved by the judge, and because it was not recorded in the parish where the property mortgaged was situate until after this suit was instituted, some ten years after the mortgage was given.
In so far, then, as the Citizens’ Bank is concerned, our former judgment was erroneous. Up to this point the same reasoning will apply as well to Smith & Co. as to the Bank. But Smith & Co. say they hold, notes due by the plaintiff’s father as part of the purchase price of the property now sought to be subjected to the minor’s mortgage, and that as the property was purchased by the father subsequent to the plaintiff’s mother’s death, the vendor’s privilege attaches, and that it is not affected by the tacit mortgage.
The sale from Ware to Morrison was made on the seventh August, 1856. The sale was made by public act, passed before a notary public in New Orleans. It was sent to the parish of Pointe Coupee, where the property sold is situate. The recorder certifies that it was recorded among the notarial acts of his office, but that he finds no inscription of the same in any of the books of mortgages.
The mere filing of the doeument and recording it among the notarial acts in his office was not the recording required by law in order to give it effect as a mortgage or to preserve the privilege which it carried with it.
The act was properly recorded in the books proper of the recorder of mortgages, on the twelfth of June, 1866.
“Privileges are valid against third persons from the date of the recording of the act or evidence of indebtedness as provided by law.” C. C. 3273 [3240.] At the time of these transactions the law was that privileges were valid against third persons from the date of the act, if it had been duly recorded, that is to say, within six days of the date, *408 if the act has been passed in the place where the registry of mortgages is kept, or adding one day more for every two leagues from the place where the act was passed to that where the register’s office is kept. C. C. 3240.
Article 3241 provides that when the act on which the privilege is founded has not been recorded within the time required in the preceding article, it shall have no effect as a privilege,- that is to say, it shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage in the meantime, which they have recorded before it; it shall, however, still avail as a mortgage, and be good against third persons from the time of its being recorded. And the law now is (C. C. 3274) that no privilege shall have effect against third persons, unless recorded in the manner required by law, in the parish where the property to be affected is situated. It confers no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded on the day that the contract was entered into.
The act of sale was not recorded within the time prescribed by the-law as above quoted. The vendor’s privilege, therefore, does not exist.
But the recording of the act operated as a mortgage from the time it was recorded. It was recorded on the twelfth June, 1866. Plaintiff’s judgment against her father was recorded in 1868. When did her mortgage attach? From the date of the recording of her judgment? or from the date when her father’s indebtedness attached ?'
Plaintiff’s tacit mortgage attached to the property purchased by her father from the day he purchased it. Lombas v. Collet, 20 An. 79. The vendor’s privilege was superior to the tacit mortgage, so long as the privilege existed; but when the privilege ceased to exist, then the tacit mortgage was in force against it, and it had its effect without being recorded. When, therefore, the act of sale was recorded, it operated as a mortgage from the date upon which it was recorded, but at that time thé property was burdened with the plaintiff’s tacit mortgage, and the conventional mortgage was second to it in rank.
It is therefore ordered, adjudged and decreed- that the judgment heretofore pronounced by us be set aside, and it is now ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed.
And it is further ordered, adjudged and decreed that the plaintiff, for the amount of her rights and claims against her father, Jacob H. Morrison, to wit:
Mrst — For the sum of $10,691 55, with five per cent, interest per annum on $4178 85 from the third of February, 1857, until paid! *409 on $1350 51 from the eighteenth December, 1861, until paid; on $2138 30 from twenty-second of February, 1863, until paid; and on $3024 14 from the first of April, 1868, until paid ; for which sum of $10,691 55 she is entitled to enforce the payment by execution' upon the prop'erty described in her petition; and
Second — For the eventual payment to her of the sum of $5583 67, amount of which her father has inherited the usufruct, and that for all said sums and interest the legal mortgage of the plaintiff, and which is now recognized and adjudged to exist on the property of Jacob H. Morrison and which affects the property described in the petition, be decreed to be superior in rank to the mortgages which the Citizens’ Bank and Samuel Smith & Co. may have, and to any privilege they pretend to have on said property ; and it is further ordered, adjudged and decreed that plaintiff is entitled to enforce her said mortgage claims by the seizure and sale of said property in preference to and with priority over any claims held or set up by the said Citizens’ Bank and Samuel Smith & Co., and that defendants pay costs in both courts.